The final case on the call this morning is number 122974, Stanphill v. Ortberg et al., Agenda No. 17. Counsel, you may proceed when ready. May it please the Court, Counsel, Hugh Griffin and Laura Postillian, on behalf of the defendant and appellants, Lori Ortberg, individually and as agent of Rockford Memorial Hospital and Rockford Memorial Health Systems. Throughout the argument, I'll be referring to Lori Ortberg. I won't be repeating Rockford Memorial, but they're in there as the principal, and she's the agent. Finally, I want to thank the Court, I think, for both sides for accommodating us on the scheduling. Thank you. It's a fundamental principle of Illinois negligence law that a defendant's alleged negligence is not a proximate legal cause of plaintiff's injury if that type of injury was not reasonably foreseeable. Now, this is a suicide case. Plaintiff Zachary Stanphill seeks to recover from Lori Ortberg for the suicide of Keith Stanphill, who desponded over his belief that his wife was having an extramarital affair. Asphyxiated himself in his garage on October 9, 2005, nine days after he had a one-hour evaluation counseling session with Lori Ortberg on September 30, 2005, and ironically two days before his appointment to see another counselor who specialized in marital counseling. Now, suicide cases really are a subspecies of what we commonly call intervening cause cases. And the fundamental reasonable foreseeability legal cause principle that I started with applies in the sense that plaintiff cannot recover if the intervening cause was not reasonably foreseeable. So in a suicide case like this, the defendant is not liable if the intervening act of suicide was not reasonably foreseeable. And that's exactly what the jury found here in answer to the special interrogatory that said, was it reasonably foreseeable to Lori Ortberg on September 30, 2005, that Keith Stanphill would commit suicide on or before October 9, 2005? The jury answered that no. Now, they did return a general verdict for the plaintiff. But given the jury's negative answer to the special interrogatory, the trial court, in accordance with 735 ILCS 5-2-1108, and a decision of the first district involving very similar facts and a very similar interrogatory answered negatively, as here, entered judgment for Lori Ortberg and Rockford-McMurray. We're here today because the second district reversed and held that, in its view, the special interrogatory answer was not inconsistent with the general verdict. And the basis of their reasoning, advanced throughout the plaintiff's brief, is that the special interrogatory was not an objective standard of what Lori Ortberg should reasonably have foreseen, but was a subjective standard of what she actually foresaw through her own eyes. Well, that's not what the interrogatory says. Nobody argued that. Nobody argued that Lori Ortberg foresaw this. I mean, we'd be in the realm of Wolf-Lewontin conduct or something of that nature. Nobody argued for that. But as you can see in their brief, that's the argument that they continually make, that this interrogatory, as worded, was a subjective test of what Lori Ortberg actually foresaw. And, again, that takes the term reasonable foreseeability right out of the interrogatory. This Court has held in numerous – Mr. Griffin, was the appellate court's finding on that that since the name Ortberg replaced reasonable person, that the jury could first find that she was negligent, and as a result of being negligent, she wouldn't have been able to reasonably foresee? Is that the argument? That's what they said. I think even as you're saying it, you can kind of – it makes no legal sense to say that. I mean, negligent – the fact that there was a general verdict doesn't change the objective standard of reasonable foreseeability. That the jury was asked to answer. So to say, well, you know, the finding of negligence in the general verdict doesn't change that objective standard. It doesn't change the law that the intervening cause must be reasonably foreseeable or there's no liability. I mean, it's just – if, in fact, you can say that she did not reasonably foresee the suicide, as the jury did, you can't have liability. I mean, really, it seems to me what the Second District reasoning comes down to is kind of an acknowledgement that these are inconsistent. We've got a general verdict of negligence. We've got a special interrogatory saying that the defendant could not reasonably foresee the suicide. They can't coexist. And I don't think you can take the negligence finding and somehow combine it into the special interrogatory and say, well, she was negligent, so therefore, I guess you could say that she didn't reasonably foresee it. That's just inconsistent. Reasonable foreseeability doesn't change. It's still a controlling immaterial issue of fact. And in the way it was answered in this case, it controlled the general verdict and the trial court properly entered judgment on that verdict. Mr. Griffin, does the record reflect that the plaintiff agreed to the form of the special interrogatory? And where would I find that if it did? Right. The only form objection that was raised in terms of wording was that when we first tendered this special interrogatory, it said, suicide or act in a self-destructive manner. Because that was the exact language in the Garcia case where the man eloped out of a window. And it wasn't clear whether he was trying to commit suicide or he was just trying to get out of the facility. So the judge said, you don't need that language, do you? And we said, no, we don't need it. Now, they preserved, they argued it's not going to be controlling. They argued that. But they never said, let's take Lori Ortberg out and put in a reasonable person. They never argued that. They're arguing it now. And they never said, let's take Lori out and put in a reasonable, careful social worker. They never made those specific arguments. But even if they had, I respectfully submit that it would have been error to do it. Certainly to say, was it reasonably perceivable to a reasonable person? I'm sure a plaintiff would be standing here saying, well, that doesn't control anything. There were a lot of reasonable people in this case. A family, including Wes Poe, who was a pastor and did some social counseling, who said they didn't foresee this coming at all. So this is a professional negligence case. The jury got 105.01 expressly telling them that in determining the reasonableness of Ms. Ortberg's conduct, Ms. Ortberg was held to possess and use the knowledge, skill, and care ordinarily used by a reasonably careful licensed clinical social worker. Now the law is, as we know, you're supposed to read the special interrogatory together with all the given instructions. So if you do that here, I mean considered together, in that context of the given instructions, including 105.01, the question asked, was Mr. Stample's suicide reasonably foreseeable to Lori Ortberg? It really asked her to decide whether Lori Ortberg, as a reasonably careful social worker, clinical social worker, should have foreseen the suicide during that one-hour session. And the jury, again, answered no. And so in our view, this is a pretty straightforward case. They say that you can't use the word defendant. And again, going back to this objective standard and subjective standard, I mean, this court, we have the cases in our brief, Anderson v. Heister, Kearns versus Engelke. Reasonable foreseeability is measured by an objective standard. Kearns, what is reasonably foreseeable presents a question of fact, which is measured by an objective standard. As far as using the word defendant, I mean, we cited all kinds of cases in our brief where the issue has been defined as was this injury reasonably foreseeable to the defendant. Many of those are suicide cases. Garcia, Jenkins, Crompton. In the context of intervening cause, you held in Bentley versus Siminian Township, 83-02-10, page 15. It's in our reply brief. The negligence of the defendant will not constitute approximate cause of plaintiff's injuries if some intervening act supersedes the defendant's negligence. But if the defendant could reasonably foresee the intervening act, then the act will not relieve the defendant of liability. So the idea that it's wrong to put the defendant in there, particularly in a professional negligence case, I submit just is incorrect. And so, again, our position is the law is clear. This was an emotional case, obviously. Two young children were left behind. But the special interrogatory served its purpose of testing that verdict on a specific ultimate issue of material fact, making the jury focus on that fact. They returned an answer to that interrogatory that is totally inconsistent with their finding in the general verdict. And that is the purpose of it. It fulfilled that purpose here. And we asked this court to reverse the appellate court and order the judgment be entered on, affirm the judgment that was entered in the trial court on the special verdict. Thank you. Any further questions? I don't see any, so thank you. Counsel? Your Honors, may it please the Court? Counsel? My name is Lori Vanderlaan, and along with Jim Best, we represent the plaintiffs in this case. I want to make sure that everybody, and I'm sure you are, but is fully aware as to what this interrogatory and how it was actually framed. The question was, was it reasonably foreseeable to Lori Ortberg that Keith Steenfeld would commit suicide on 9-9 of 2005? In this case, the appellate court overturned the trial court and found that, number one, judgment should be entered on the general verdict because the general verdict and the answer to the interrogatory were consistent. The second reason the appellate court overturned the trial court and ruled that judgment be entered on the general verdict because the interrogatory was in an improper form. If this court finds that the appellate court was correct on either one of those fronts, judgment must be entered on the general verdict, and the appellate court must be affirmed on either one of those. They're somewhat mutually exclusive. I also think it's important in this case that when we get into talking about consistency, is that there has to be an appreciation, and the defendants do not refer to this at all, but it's not just that a general verdict for negligence was entered. It's not just that, but on what charges of negligence was that general verdict issued or entered? Because as this court has already held, there has to be complete irreconcilability between the various issues submitted to the jury in the finding and the special interrogatory. So you have to consider what were the issues sent to the jury that they found Lori Ortberg to be negligent on. And those issues were, well, first off, everyone agrees that it was her job to evaluate, assess depression, anxiety, and suicide. Everyone agrees it was her job to prevent Heath Stanfield's suicide. Everyone agrees, and when I say everyone, I mean Lori Ortberg and her experts agree, that if she found him suicidal, it was her job to refer him to an emergency room. They had a statement of understanding between Rockford Memorial Hospital. It was a signed statement that said they undertook the obligation to prevent imminent threats of suicide. So the jury was charged with determining whether Lori Ortberg failed to act as a reasonably careful social worker in one of four ways. Did she fail to properly evaluate him? Did she fail to properly diagnose him? Did she fail to recognize he was suicidal? And did she fail to properly refer him to an ER or a psych? No disputes are present before you as to whether there was sufficient evidence on each one of those charges. No disputes before you as to whether there was sufficient evidence that any negligence on any one of those charges was approximate cause of his suicide. When you look at those charges, and I'm just going to pick one of them by example, she failed to recognize he was suicidal. Under no circumstance could there ever be inconsistency between the special finding and the general verdict on the issue of whether she failed to recognize he was suicidal. Failed to recognize he was suicidal, failed to foresee he would commit suicide. There's no difference there. Those are absolutely consistent. Failed to diagnose him. Failed to evaluate that he was suicidal. Failed to refer him because she admits if she knew he was suicidal, she would have to. She denies that she thought he was suicidal. All right? She says she didn't know he was suicidal. So when her own testimony says she didn't know he was suicidal, and the jury is asked in the special finding to determine whether it was reasonably foreseeable to Lori Ortberg whether he would commit suicide, what other answer do they give other than no? She failed to recognize him. She admits he wasn't suicidal. So how could it ever be reasonably foreseeable to her? In this court in Simmons versus – Back to Justice Berg's question. Yes. Was there an objection to the special interrogatory as promulgated? Did we make – we made a long list of objections to that special interrogatory. There are pages of transcripts. Did you submit another special interrogatory? We did not, and I don't believe we were required to because for several reasons. Number one, it was a special interrogatory proffered by the defendant. It wasn't an instruction that the jury had to have in order to make a decision in the case. In the long objection, how did you indicate that the special interrogatory should read if the judge was going to allow it? We said that the special interrogatory was improper because a jury could find that with Lori Ortberg in there, a jury could find that because she didn't do her job, she couldn't foresee that he would commit suicide. We also – the judge also brought up the issue, well, maybe it doesn't need to be her, and then the judge is like, well, yes, it has to be as to her. And defense counsel said, absolutely, that's the way it has to be. So the judge had simply absolutely made up his mind and also said, I'm going to follow Garcia in this case. I don't like this interrogatory. I don't want to enter this interrogatory, but I feel I have to, and I'm going to follow the first district decision in Garcia. So when you look at this court's decision in Simmons – and the other thing I would just point out – Is the judge's objection in the record? Is the judge's objection in the record? Yes. It's in the transcript on the conference, the jury instruction conference. The jury instruction conference on the special interrogatory. Correct. The other thing is, as it relates to consistency, to get back to your point, Your Honor, it's mutually exclusive. We can make an argument on consistency regardless of any of those issues you raised and whether we suggested changes or objective to form or anything like that. There's strong case law in that regard. So when we get back to consistency in this court's decision in Simmons, this court said, well, first of all, we have the statutory 5.2-1108 special finding only controls if the special finding is inconsistent. In Simmons, this court said, well, what do we mean by inconsistent? If there's any reasonable hypothesis, a reasonable hypothesis to find consistency, then it is not inconsistent. In addition, there has to be absolute irreconcilability with the various issues sent to the jury on which the jury found the defendant's negligent in order for the special finding to trump the general verdict. Finally, all reasonable presumptions go in favor of the general verdict. So as the appellate court held, in this case, the plaintiff's theory at trial was that Ortberg was negligent in the performance of her duties. A jury could conclude that because she was negligent, it was not reasonably foreseeable to her that Keith would commit suicide approximately nine days after he met her. Thus, as the general verdict and the answer to the special interrogatory were not clearly and absolutely irreconcilable, the trial court should have entered judgment. The appellate court was spot on. They applied your guys' analysis, this court's analysis in Simmons to a tee by looking at the charges of negligence. What are the basis for finding her negligent and comparing the answer to the special interrogatory and finding whether there's a reasonable hypothesis for consistency between the two? So absolutely, the appellate court got it right. And the appellate court should be confirmed on the consistency issue alone. How should the interrogatory read? I'll ask you that. Sure. According to the decisions of this court, reasonable or legal cause, I have to get my notes here real quick, make sure I have it right, that legal cause should be whether or not a reasonably prudent person would have foreseen the injury as a likely consequence of his conduct. So in this case, the interrogatory either should have had a reasonable person or it should have had a reasonably careful social worker. And here's why. Let's talk about, now I'm going to the form part of my argument. Let's talk about why do we even have legal cause. And this court has said time and time again that the whole reason why we have legal cause is that you want to make sure that persons are only liable for the injury if the injury was foreseeable and that if a reasonably prudent person as a consequence of their negligence would have foreseen this. So in other words, we don't want to just have negligence without there being foreseeability. So how do we test whether or not it was reasonably foreseeable to a reasonably prudent person that Keith Stanfill would commit suicide? You can only test that through a reasonable person's standard. You can't test it through the subjective viewpoint of a Lori Ortberg, and that's the way this interrogatory was worded. So the whole point is she may have been negligent, and she was negligent, and the jury found her negligent. Now we have to say, but if a reasonably prudent and careful social worker had assessed him, would his suicide have been foreseeable to that social worker? That's the test. If it wasn't reasonably foreseeable to a reasonably careful social worker, then there wouldn't be liability in this case. But that wasn't the test that the jury was asked to answer. They were asked to answer whether it was reasonably foreseeable to her. And this whole concept of, well, the word reasonable was in there, and you could construe that with all the other interrogatories, the instructions. Nowhere was the jury ever told that, hey, when you look at the special interrogatory, look at that and combine it with the definition of a reasonably careful social worker. Weren't they fully instructed, however, on the special interrogatory? Only given the special interrogatory. I mean, they were given the special interrogatory to answer, but they weren't told, like, how do you reconcile that? Like, what does it mean when it says reasonably foreseeable to Lori Ortberg? Are they supposed to go back and then look at the negligence instructions? Like, they weren't given any instructions in that regard. And so the appellate court looked at this and said, you know, this is really ambiguous. How is the jury supposed to reconcile this? And not only did the appellate court look at this and say it's really ambiguous, but the trial judge looked at it and said, this is so ambiguous. I mean, how many cases do you guys see where the trial judge is begging the appellate court to reverse them? Because the interrogatory is so poorly worded, but he felt that he had to give it. So could you discuss the Garcia case? This is the case where the trial court felt didn't like it, as you just said. Yeah. It felt that he was compelled to give this instruction because of the Garcia case. Yeah. So the trial court felt that the Garcia case was a suicide case. It's very different than our case. From the standpoint is I kind of call our case a front-end case, a front-end case, and Garcia was a back-end case. Meaning we were involved in preventing, or in this case, the issue of preventing the suicide had to deal with evaluating, assessing, diagnosing, and referring. In Garcia, everybody agreed he was evaluated. Everybody agreed he wasn't suicidal, the plaintiff or the decedent in Garcia. In fact, suicide wasn't even the plaintiff's theory of the case. It was the defendant's theory of the case. So everybody agreed as to what was in the mind of the defendants in that case. And so then Garcia allowed an interrogatory that said was it reasonably foreseeable to, I don't know if it was the defendant or the name of the defendant. So it paralleled this interrogatory exactly. But it was very different. But the key in that case is nobody objected. Nobody objected to that subjective standard. But Garcia relied upon Hooper, and that was its predecessor. And it referred to Hooper, and in Hooper, a special interrogatory wasn't given, but the appellate first district said it should have. And in Hooper, the interrogatory was asked was it reasonably foreseeable that the plaintiff would commit suicide. Never included the word of the defendant. And under this court's decision in Beretta, that is definitely not the standard. In fact, this court said that it's what a reasonably prudent person in the business of the defendant would have foresaw as a likely consequence of their actions. This court specifically said you don't look at this defendant, what this defendant saw or should have saw. You look at what a reasonably prudent person in the position or the business of this defendant would have seen. The other thing I want to make a point is this is not an intervening cause case. And a lot of the cases that the defendants cite do claim it's an intervening cause. And whether an intervening cause was reasonably foreseeable, there's a case called Winger v. Franciscan. I think it's out of the third district. And it talked about whenever you're dealing with mental health professionals and they're charged with, I mean, it's their job, right, to assess the mental health and, as Lori Ortberg admitted, to prevent suicides in this case. And that case said the whole theory about suicide being an intervening cause basically goes out the window when we're talking about mental health cases. And this court actually had a decision in the case of Tercios v. DeBruyler. I don't have the exact site here. 232 Northeast 2nd, 111 is the site I have in front of me. But in that case, it was somebody trying to extend the intervening cause exception to an intentional infliction of emotional distress. And in that case, this court said, we recognize it's the general rule in negligence actions that suicide is an independent intervening act. That rule has been applied in wrongful death actions based on conduct by the defendant amounting to negligence, provided the defendant was under no duty to the student to prevent the suicide. And then it refers to winger as its support. So this court has already recognized this is not an intervening cause because there was an intervening cause. It was her job to prevent the actual event that happened. Nothing intervened in between there. So those intervening cause cases do not apply as well. Getting back to this interrogatory, in the appellate court, in all of the case law that this court has held about it being an objective standard, there's absolutely no question about that. There's no question that the interrogatory in this case just wasn't objective, wasn't reasonably foreseeable to Lori Ortberg. This court has found if the form is improper, that the special interrogatory should be set aside and judgment should be entered on the general verdict. The other thing is that the appellate court in this case found this interrogatory to be so ambiguous. And like I said, so did the trial court. And I think I had mentioned, but Mr. Best argued at the instruction conference. And it was a vigorous argument by both sides. But, like, he argued, look, the jury could actually answer no to this because they felt she did not do her job. Mr. Best predicted the exact outcome in this case. He predicted that before it ever happened. If you want to talk about what's the definition of a hypothesis that we all learned in, like, seventh grade science class, is to predict the outcome based on some reasonable information that you have at hand, he predicted that. That's the definition of reasonable hypothesis that we would use in that consistency argument. But he found it ambiguous. Judge Prochaska found it ambiguous. And a unanimous panel of the appellate court found that interrogatory ambiguous. So I'm being nice probably to everybody, but combined they probably have over 100 years of legal experience, and they all found it to be ambiguous. How in the world could a lay juror not find that to be ambiguous? And that's why the second district held as they did. It was confusing, and it was ambiguous, and it was not in proper form, and it shouldn't have been given to begin with. But I get back to my points, is that you can affirm the appellate court, whether it's on the consistency argument or whether it's on the form argument. Any issues that defense brings up as to waiver or forfeiture, we completely disagree with that. You read the transcript. The court was lockstep with us on everything we were objecting to. The court knew lockstep. He said, I have to give this instruction. There was no forfeiture, but I also raised in my brief that the issue of forfeiture or waiver on our part was never raised in the petition for leave to appeal to this court. So the defense forfeited that argument before this court. The bottom line is there was consistency between the verdict and the general verdict and the special interrogatory. The special interrogatory also should never have been given because it was ambiguous and confusing. Because of that, you can confirm and affirm the appellate court on either one of those issues, and we would ask that you do so and that you affirm and that judgment be entered in favor of the general verdict and in favor of the plaintiff. Thank you for your time, unless anybody has any other questions. Seeing none, thank you. Okay, and I, too, want to thank you all for accommodating my trial schedule. So I appreciate making everybody work really late here, so I appreciate it. Thank you. Mr. Griffin? Hi. I've been thinking of something as these arguments have been going on, and that's helping it at least with me frame this. Think of this hypothetical medical malpractice case, which you've been involved in before, right? Defended doctor on the stand. The plaintiff's lawyer says to the defendant, doctor, doctor, do you believe that operate and the gentleman was a deviation from the standard of care? The defendant, doctor, no surprise, says, no, I didn't believe I was deviating from any standard of care. I think that surgery was indicated. Plaintiff puts on their expert and says to the expert, do you know that the defendant, doctor, said that he did not deviate from the standard of care when he decided to go on with the surgery? And the plaintiff's expert says, well, that's no surprise. That's the defendant, doctor. I'm telling you it was a deviation from the standard of care. If there was a special interrogatory in that case that said, do you believe that the defendant, doctor, believed that he deviated from the standard of care? The obvious answer by the jury was, no, I don't think he believed that he deviated from the standard of care. If they had asked the question, I'm going to give you a chance. If they had asked the question, special interrogatory indicating, do you believe there was a deviation from the standard of care, you know, based on what a reasonable doctor would have done under those circumstances, the answer would, quite frankly, be different. In this case, couldn't the jury have thought that in this particular case, that if indeed the defendant thought that suicide was reasonably foreseeable, presumably that defendant would have done something about the prospect of suicide, right? That's really their point here. I mean, their point is that it's not necessarily inconsistent for the jury to say, just like in my doctor example, that the doctor deviated from the standard of care. He didn't think he deviated from the standard of care. If he did, presumably he would not have done the surgery. The jury here is assessing whether this particular defendant, whether it was reasonably foreseeable to Ortberg that suicide might occur. And the jury might say, well, it couldn't have been reasonably foreseeable to her. Because if it was, she would have done something and gone further about the suicide. So I don't know if that makes sense to you, but it's helping make some sense to me. Now you can go. To me, the only way you can make that assertion is to take out the words reasonably foreseeable. Wait, wait, wait. Reasonably foreseeable to Ortberg. Right. Was it reasonably foreseeable to Ortberg? That's an objective test. There was plenty of testing. They go through a whole trial trying to show why it was a deviation, that there was negligence on the part of Ortberg for not proceeding, right? Right. For lack of going into all the facts. They go through the entire trial on that, right? And now they're asked if it was reasonably foreseeable to Ortberg. Like my example, why couldn't a juror sit there, at least with respect to ambiguity, and say, well, it must not have been reasonably foreseeable to her, because if it was, she would have done something about this. Just like if I, in my example with the doctor, you know, did the doctor feel that he deviated from the standard of care? No, he didn't. But the jury could still find that there was malpractice based on a deviation from the standard of care. Okay, that's a subjective standard. If it had said, did Lori Ortberg believe or feel that there was no suicidal tendency here, that would be a subjective test. What was in her mind? What was in her eyes? And that's what they claim the interrogatory was, but it wasn't. It was a plain, objective test. Was it reasonably foreseeable to Lori Ortberg? That's an objective standard. That doesn't take into account what she brought. It imposes a reasonable standard in accordance with 105.01, holding her to the standard of a careful, licensed clinical social worker. The jury had all kinds of evidence on this. They call an expert in psychiatry. We call an expert in psychiatry. They expressly testified on reasonable foreseeability, addressed it expressly. And their expert was very good. He says, I think it was reasonably foreseeable. I don't mean she in her mind thought there was going to be suicide. I don't mean that. That's objective. I just mean she should have, based on everything in front of her, she should have concluded, objectively, reasonably concluded that the man was suicidal. So that was his opinion. Now, our expert came on, gave, of course, a wholly different meaning, a conclusion given the fact there was no suicidal plan, no suicidal ideation, no prior suicide in the family. So he testified a length. There was no reasonable objective foreseeability here. Not what was in her mind, but what is she held to know under the law, under our objective test? What is she held to know? And so, and then the jury heard the arguments of both counsel on this. If I can quote plaintiff's counsel. Let's go with what happened to the experts. The jury could have believed the plaintiff's experts that it was reasonably foreseeable that Keith Stampil would commit suicide. They could absolutely believe that it was reasonably foreseeable that Stampil was going to commit suicide. They could believe their experts and not your experts. You would agree with that? Oh, sure. Okay. That was the battle line. That was the battle. And both counsel argued it. And they rendered a verdict to that effect. Right? They believed the plaintiff's experts over yours, at least as far as the verdict. As far as the general verdict. Right. Now, if the interrogatory said, was it reasonably foreseeable that Keith Stampil would commit suicide on or before October 9, 2005, and they came back with, no, we don't think it's reasonably foreseeable, I don't think we'd be here. Right? Well, I'm sure you would be, because they'd be saying, well, wait a minute. There's all kinds of people out there that were reasonably present. Maybe we'd be here, but it might be a different question. This case was against Lori Ortberg for professional negligence. Nobody else. No other social worker. And so the issue, again, I think what we're saying is, yeah, that's inconsistent. Yeah, sure it is. For the general verdict to come in and have this say, well, the suicide was not objectively reasonably foreseeable to her, that's inconsistent. Yes, it is. Well, their whole point was that it wasn't reasonably foreseeable to her, or it wasn't reasonably foreseeable to her, or she would have done something about it. And that was the battle line. And that's why that special interrogatory was so critical. That's what special interrogatories do. They test the general verdict. You can't say, well, gee, the general verdict went the other way, so I guess we don't have to worry about the special interrogatory answer. Again, both counsels, there was plenty of testimony. Both counsels told the jury what to do with that special interrogatory. But should Lori Ortberg reasonably foreseen that Keith Bagsill would have committed suicide? Should she have reasonably foreseen? That's what – was it reasonably foreseeable to her? No, that wasn't reasonably foreseeable to her, not whether she should have reasonably foreseen. Just like the doctor, was it a deviation from the standard of care? No, to me it wasn't. But should he have known it was a deviation of the standard of care? Isn't that a different question? I don't think it – I think it's another way of saying what this interrogatory said. I think it's just two different ways of saying it. When you say, was it reasonably foreseeable to her, you're saying, well, should she have known about it or not? I think that's what you're asking the jury. That's the way it was argued by the experts. The trial court said, hey, this whole case is about whether Lori Ortberg should have foreseen this. That's what this whole case has been about. That's what he said at the end of the trial. And counsel argued it. He said, you know, plaintiffs, you can argue based on your view of it, that it was reasonably foreseeable to her, defendants can argue from their testimony and their evidence that it wasn't. And so he didn't see a problem with giving the interrogatory. He didn't later on make some comments about Garcia. But still, I think his initial reaction was right. This is the issue that's been framed for this jury from day one. And, you know, yes, it's inconsistent to come back with a no answer and say there was a general verdict of liability. But, again, it didn't ask her, what did she believe? Obviously, she didn't believe it was suicidal. But that's a subjective test. That isn't the objective test that the jury had in front of them. And it's just that to me it's a matter of pristine law. If, in fact, you're saying this outcome was not reasonably foreseeable to the defendant, there's no liability in it no matter what issues you look at in their issues instruction. They all require that Lori be able to reasonably foresee this outcome. And that was, again, that was, this whole trial was about that. And I think we're, I don't think you can conflate the general verdict and the special interrogatory answer like they're doing. And, again, it's not a subjective test for sure. That's not what it asked. And, again, I think what it's really coming down to is those aren't consistent answers. And that's right. And under our law? If Lori Ortberg was asked at trial, was this reasonably foreseeable to you, and she said no? She said she did not foresee that he was suicidal. She did not think he was suicidal. So she said she didn't foresee it. Right. She was at the trial. I didn't foresee this. I don't know if she used that word foresee. Our expert did. The experts were questioning. All right. Well, hypothetical or not, could she at trial say, I did not reasonably foresee that suicide was going to be committed or something to that effect? Well, sure. Yeah, sure. And without a special interrogatory? Forget the special interrogatory. Based on that testimony and everything else that came in, experts going either way trying to show that a reasonable social worker should have known, could there have been a verdict under that scenario for the plaintiff? Oh, sure. Oh, sure. So what's the difference between that and a special interrogatory where they say, hey, we believe her, she didn't reasonably foresee it, but she should have? Well, again, the language reasonable foreseeability, and you've said it in other cases, that's an objective standard. That's an objective test. It doesn't go into what's in somebody's mind. Was it reasonably foreseeable to her based on all the evidence, based upon the fact that she's a licensed clinical social worker under a 105.01, and she's held to the standard? Was it reasonably foreseeable to her? That's an objective test. It doesn't talk about what's in her mind. And, again, it's inconsistent with the ultimate general verdict. No question about it. Mr. Griffin, your time has expired. To wrap up, you have a lot of questions from Justice Thomas here, or maybe he took more time than you did. I'm not sure. Thanks for entertaining my thoughts. Thank you very, very much. Thank you very much. Thank you. Thank you. Case number 122974, Stanfield v. Hartford, will be taken under advisement as agenda number 17. Mr. Griffin, Ms. Vanderland, we thank you for your arguments today.